**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**No.  13-2311**
_____

**WEST VIRGINIA CWP FUND,
As carrier for LAYFAYETTE SPRINGS
ENTERPRISES, INC.**

**Petitioners**

**v.**

**VALLA JEAN LOUDERMILK,**
on behalf of and as surviving spouse of
**HAROLD E. LOUDERMILK**

and

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR**

**Respondents**

_____

**On Petition for Review of an Order of the Benefits
Review Board, United States Department of Labor**
_____

**BRIEF FOR THE FEDERAL RESPONDENT**
_____

**STATEMENT OF JURISDICTION**

The Director adopts Lafayette Spring's statement of jurisdiction.

**STATEMENT OF THE ISSUES**

30 U.S.C. 921(c)(4) provides a rebuttable presumption that certain claimants

who worked as coal miners for at least fifteen years and suffer from a totally disabling respiratory or pulmonary impairment are totally disabled by pneumoconiosis and therefore entitled to federal black lung benefits.[1]  There is no dispute that Mr. Loudermilk (the miner) is entitled to this presumption.

One way an employer can rebut the presumption is to prove that the miner's disability was not caused by pneumoconiosis.  The statute, however, does not specify what showing an employer must make to establish rebuttal on disability-causation grounds.  The Department of Labor's implementing regulation adopts the rule-out standard, which requires an employer to prove that pneumoconiosis caused "no part" of the miner's disability.

30 U.S.C. 932(l) provides for automatic entitlement for certain survivors of miners who are determined to be eligible to receive benefits.  Having awarded the miner's claim, the ALJ found Mrs. Loudermilk (the widow), automatically entitled to benefits and awarded her claim.

The questions presented are:

1. Whether the regulation adopting the rule-out standard is permissible.

---

[1] Unless otherwise noted, all citations to the Black Lung Benefits Act in this brief are to the 2012 version of Title 30.  As discussed throughout, two BLBA sections – 30 U.S.C. 921(c)(4) and 932(l)-- the primary sections in dispute here – were amended in 2010.  Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010); *see Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 553 n.1 (4th Cir. 2013).

2. Whether the ALJ erred in awarding the widow's claim when the miner's award, though non-final, made him eligible to receive benefits.[2]

## STATEMENT OF THE CASE

Because the Director limits his response to Lafayette Spring's legal challenges to the ALJ's awards, a detailed recounting of the procedural history and underlying medical evidence is unnecessary. The critical background facts are the history of the relevant statutory and regulatory provisions (which is detailed below, *infra* at 9-17) and their application in the decisions below.

### November 30, 2010 ALJ Decision and Order Denying Benefits

Administrative Law Judge Janice K. Bullard denied BLBA benefits in both claims in a decision dated November 30, 2010. ALJ Bullard invoked the Section 921(c)(4) presumption of total disability due to pneumoconiosis based on the miner's 27.15 years of qualifying coal mine employment and his total respiratory disability. 2010 ALJ D&O at 21. She also found, based on autopsy and medical opinion evidence, that the miner suffered from clinical pneumoconiosis. *Id*. at 23-24. The ALJ then determined that Lafayette Springs rebutted the presumption by proving that the miner's total disability did not arise out of, or in connection with,

---

[2] Lafayette Springs raises various challenges to the weighing of the conflicting medical evidence in the decisions below. These are not addressed in this brief.

his coal mine employment. *Id*. at 25-26. She therefore denied the miner's claim. *Id*. at 26.

The ALJ likewise denied the widow's claim because the record evidence established that the miner's death was due to cancer, not pneumoconiosis. *Id*. at 27.

### December 1, 2011 Benefits Review Board Decision and Order remanding both claims.

Acting *pro se*, Mrs. Loudermilk appealed the denials to the Board, which affirmed in part, vacated in part, and remanded both claims for further proceedings. The Board affirmed as unchallenged on appeal the ALJ's invocation of the Section 921(c)(4) presumption and her finding of clinical pneumoconiosis. 2011 BRB D&O at 3 n.4. It found numerous errors, however, in the ALJ's weighing of the conflicting medical opinions on rebuttal. *Id*. at 5-7. It thus instructed the ALJ on remand to "fully consider the physicians' respective analyses, the quality of their reasoning, their qualifications and the extent to which their conclusions are consistent with the prevailing medical and scientific views accepted by DOL." *Id*. at 7.

The Board similarly remanded the survivor's claim. It explained that the ALJ must consider whether the widow is derivatively entitled to benefits under Section 932(l) if the miner's claim is awarded; and if not, then the ALJ must address all the relevant evidence in the widow's claim, resolve the conflicting

medical opinions, and determine whether Lafayette Springs rebutted the Section 411(c)(4) presumption (which presumes in survivor cases that the miner's death was due to pneumoconiosis). 2011 BRB D&O at 8.

September 18, 2012 ALJ Decision and Order awarding both claims.

On remand, the case was reassigned to ALJ Adele H. Odegard who awarded both claims in a decision dated September 18, 2012. Based on the prior unchallenged findings of more than fifteen years of coal mine employment and total respiratory disability, ALJ Odegard invoked the Section 921(c)(4) presumption of total disability due to pneumoconiosis. 2012 ALJ D&O at 5. She further observed that because clinical pneumoconiosis had been established, the only means of rebuttal available to Lafayette Springs was to establish that the miner's totally disabling respiratory impairment did not arise out of, or in connection with, his coal mine employment. *Id*. at 6. The ALJ rejected Lafayette's expert medical opinions because they were not sufficiently well-documented or well-reasoned. *Id*. at 7-9. Among other reasons, the ALJ ruled that Drs. Fino and Castle failed to address the cause of the miner's residual qualifying respiratory impairment, as demonstrated in his most recent pulmonary function tests. *Id*. at 8. As a result, the ALJ ruled that these opinions failed to rebut the Section 921(c)(4) presumption because they did not rule out the connection between the miner's disabling respiratory impairment and his coal mine

5

employment. *Id*. at 11. The ALJ accordingly awarded the miner's claim. *Id*.

The ALJ then granted the widow's claim. Relying on the miner's award, she found that the widow was automatically entitled to benefits under Section 932(l). *Id*. at 13.

### August 29, 2013 Benefits Review Board Decision and Order affirming both awards

Following Lafayette Spring's appeal, the Board affirmed both awards in a decision dated August 29, 2013. The Board rejected Lafayette Spring's assertion that the ALJ used an erroneous standard on rebuttal by requiring it to prove that the miner's total disability did not arise out of, or in connection with, coal mine employment. 2013 BRB D&O at 4 (*citing Barber v. Director, OWCP*, 43 F.3d 899 (4th Cir. 1995) and *Rose v. Clinchfield Coal Co.*, 614 F.2d 936 (4th Cir. 1980)). It further upheld, as supported by substantial evidence and within the ALJ's fact-finding discretion, the discrediting of Lafayette Spring's medical experts because "they failed to adequately explain how they eliminated the miner's 27.15 years of coal dust exposure as a contributor to his disabling pulmonary impairment." *Id*. at 4-6. The Board therefore affirmed the ALJ's finding that Lafayette Springs did not rebut the Section 921(c)(4) presumption and accordingly affirmed the miner's award.

Based on the miner's award, the Board found the widow automatically entitled to benefits under Section 932(l) and affirmed her award. 2013 BRB D&O

at 6-7. In doing so, the Board rejected Lafayette Spring's contention that the miner's award must be final before the widow is automatically entitled to derivative benefits.  It explained that application of Section 932(l) does not depend on the miner's award being final; rather, it merely requires a determination that the miner be "*eligible* to receive benefits. . . at the time of his or her death."  *Id*. at 6 (emphasis in original).

## SUMMARY OF THE ARGUMENT

The Department of Labor, after notice-and-comment rulemaking, promulgated revised 20 C.F.R. § 718.305(d), which implements the fifteen-year presumption and provides standards governing how it is invoked and rebutted. Like its predecessor, the revised regulation provides that any party attempting to rebut the fifteen-year presumption on disability-causation grounds must rule out any connection – not merely a "substantial" connection – between pneumoconiosis and disability.  The statute is silent on this issue, and the regulation fills that gap in a way that faithfully promotes the purpose of Section 921(c)(4).  Moreover, the regulatory rule-out standard was implicitly endorsed when Congress re-enacted the fifteen-year presumption without change in 2010 and is consistent with this Court's interpretations of that provision and the similar interim presumption.  It is therefore a reasonable interpretation of the Act entitled to this Court's deference under *Chevron.*

7

The regulation is also perfectly consistent with the Supreme Court's decision in *Usery v. Turner Elkhorn*. *Usery* simply held that employers can rebut the fifteen-year presumption by proving that a miner's disability is unrelated to pneumoconiosis. Revised 20 C.F.R. 718.305(d)(1)(ii) itself allows for rebuttal on that ground. Contrary to Lafayette Spring's suggestion, *Usery* does not hold that employers must be allowed to rebut the presumption merely by proving that pneumoconiosis is not a "substantial" cause of a miner's disability. Like the statute itself, *Usery* is silent on that point.

Finally, Lafayette Springs argues that the ALJ erred in awarding the widow automatic derivative benefits under Section 932(l) because the miner's award is not yet final. The plain language of Section 932(l), congressional intent, and the Department's regulations, however, require only that the miner's claim be in award status for the widow to obtain derivative benefits.

## ARGUMENT

### I. Standard of Review

This brief addresses only Lafayette Spring's legal challenges to the miner and widow's awards. This Court exercises de novo review over the ALJ's and the Board's legal conclusions. *See Westmoreland Coal Co. v. Cox*, 602 F.3d 276, 282 (4th Cir. 2010). The Director's interpretation of the BLBA, as expressed in its implementing regulations, is entitled to deference under *Chevron, U.S.A., Inc. v.*

8

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), as is his interpretation of the BLBA's implementing regulations in a legal brief. *Elm Grove Coal v. Director, OWCP*, 480 F.3d 278, 293 (4th Cir. 2007); *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159 (1988) (citation and quotation omitted); *see also Auer v. Robbins*, 519 U.S. 452, 461-62 (1997).

## II. The regulatory rule-out standard is a permissible interpretation of the Act.

## A. The rule-out standard in context

Lafayette Spring's primary legal argument is that the ALJ improperly required it to rule out any connection (rather than any "substantial" connection) between the miner's disability and pneumoconiosis to rebut the fifteen-year presumption on disability-causation grounds. Pet. Br. 19-30. Because the BLBA's implementing regulations adopt the rule-out standard, the ultimate legal question is simple: in light of the statute's silence on the topic, is the Department's regulation permissible under *Chevron*? Unfortunately, that question is presented in the context of a complicated regulatory regime. Rather than discussing that regulatory scheme piecemeal, this brief begins with an explanation of the fifteen-year presumption and its implementing regulations before addressing Lafayette Spring's challenge to the regulatory rule-out standard.

### *1. 30 U.S.C. 921(c)(4) and its implementing regulations*

The BLBA was originally enacted in 1969 to provide compensation for coal

miners who are totally disabled by pneumoconiosis and their survivors. *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 683-84 (1991). Recognizing the difficulties miners face in affirmatively proving their entitlement to benefits, Congress has enacted various presumptions over the years. One of these is 30 U.S.C. 921(c)(4)'s fifteen-year presumption, which was first enacted in 1972 and provides, in relevant part: "If a miner was employed for fifteen years or more in one or more underground coal mines, . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis[.]" 30 U.S.C. 921(c)(4) (1972). In 1981, the fifteen-year presumption was eliminated for all claims filed after that year.[3] In 2010, however, Congress restored the presumption for all claims filed after January 1, 2005, and pending on or after March 23, 2010.[4] The presumption therefore applies to the miner and widow's claims, which were both filed in 2006, and remain pending. Director's Exhibits Nos. 2 (miner's and widow's claims); Director's Exhibit 2 (widow's claim). (Although the Section 921(c)(4) presumption was applicable to the widow's claim, it was not utilized because she was found automatically entitled

---

[3] Pub. L. No. 97-119, § 202(b)(1), 95 Stat. 1635 (Dec. 29, 1981).

[4] Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010); *see Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 553 n.1 (4th Cir. 2013).

to derivative benefits under 30 U.S.C. 932(l) based on the miner's award).

On September 25, 2013, the Department of Labor promulgated a regulation ("revised Section 718.305" or "revised 20 C.F.R. 718.305") implementing the fifteen-year presumption.[5]    The regulation specifies what an employer (or the Department, if there is no coal mine operator liable for a claim) must prove to rebut the presumption once invoked.  *See* Revised 20 C.F.R. 718.305(d).  While it uses different language, in substance the revised regulation is identical to its predecessor in all respects relevant to this case.[6]  *See infra* at 15-16; Pet. Br. at 26, n.10.  Because the new regulation applies to both claims here and is clearer than its predecessor, this brief primarily discusses Lafayette Spring's petition through the lens of revised Section 718.305.[7]

---

[5] Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits; Final Rule, 78 Fed. Reg. 59102, 59114-15 (Sept. 25, 2013) (to be codified at 20 C.F.R. 718.305).

[6] 20 C.F.R. 718.305 was originally promulgated in 1980.    Standards for Determining Coal Miners' Total Disability or Death Due to Pneumoconiosis, 45 Fed. Reg. 13677, 13692 (Feb. 29, 1980).  Aside from the addition of subsection (e) to account for Congress's removal of the presumption in claims filed after 1981, the regulation remained unchanged until the 2013 revision.  *See* 20 C.F.R. 718.305 (2012).

[7] The revised regulation applies to all claims affected by the statutory amendment.  *See* Revised 20 C.F.R. § 718.305(a). Lafayette Spring does not argue that the revised regulation should not be applied.    The Tenth Circuit, the only court to consider the issue, recently held that the amended rules in Section 718.305 apply

(continued…)

11

## 2. Elements of entitlement

Miners seeking BLBA benefits are generally required to establish four elements of entitlement: *disability* (that they suffer from a totally disabling respiratory or pulmonary condition); *disease* (that they suffer from pneumoconiosis); *disease causation* (that their pneumoconiosis was caused by coal mine employment); and *disability causation* (that pneumoconiosis contributes to the disability).   20 C.F.R. 725.202(d)(2) (listing elements); *see Lane v. Union Carbide Corp.*, 105 F.3d 166, 170 (4th Cir. 1997).

Pneumoconiosis comes in two forms, clinical and legal. "Clinical pneumoconiosis" refers to a particular collection of diseases.   20 C.F.R. 718.201(a)(1).   "Legal pneumoconiosis" is a broader category, including "any chronic lung disease . . .arising out of coal mine employment."   20 C.F.R. 718.201(a)(2).[8]  Because legal pneumoconiosis encompasses both the disease and

_____

(…continued)
retroactively "because they do not change existing law and are substantially consistent with prior regulations and agency practices."  *Antelope Coal Co. v. Goodin*, --- F.3d ---, No. 12-9590, 2014 WL 804008, *7 (10th Cir. March 3, 2014) (citations omitted).  *See also Smiley v. Citibank*, 517 U.S. 735, 744 n.3 (1996) (Regulations that do not "replace [] a prior agency interpretation" can be applied to "antecedent transactions" without violating the general rule against retrospective rulemaking.).

[8]  This has been true since 1978, when the current statutory definition of pneumoconiosis – "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment" –
(continued…)

disease-causation elements, disease causation has independent relevance only when discussing clinical pneumoconiosis.[9]

### 3. The fifteen-year presumption and methods of rebuttal

The same four basic elements of entitlement apply in claims governed by Section 921(c)(4)'s fifteen-year presumption. To invoke the presumption, a miner must establish (in addition to fifteen years of qualifying mine employment) total disability by a preponderance of the evidence. Once invoked, the miner is presumed to satisfy the remaining elements of entitlement. The burden then shifts to the employer to rebut (again by a preponderance of the evidence) any of those presumed elements (disease, disease causation, and disability causation).

While there are three presumed elements available to rebut, there are in practice only two basic methods of rebuttal. This derives from the fact that, in order to rebut the disease element, the employer must prove that the miner does not have legal pneumoconiosis (which includes the disease-causation element) in

_____

(…continued)

was enacted. 30 U.S.C. 902(b); *see* Black Lung Benefits Reform Act of 1977, Pub. L. 95-239, § 2(b), 92 Stat. 95 (March 1, 1978) (enacting current 30 U.S.C. 902(b)). Before 1978, the Act defined pneumoconiosis more narrowly as "a chronic dust disease of the lung arising out of employment in a coal mine." 30 U.S.C. 902(b) (1972). Under the narrower definition, only clinical pneumoconiosis was generally compensable. *See infra* at 30-31.

[9] Miners with clinical pneumoconiosis and at least ten years of coal mine employment are rebuttably presumed to satisfy the disease-causation element by operation of 30 U.S.C. § 921(c)(1). See 20 C.F.R. § 718.203(b).

addition to proving the absence of clinical pneumoconiosis. *Barber v. Director, OWCP*, 43 F.3d 899, 901 (4th Cir. 1995); 78 Fed. Reg. 59106; *see Big Branch Resources, Inc. v. Ogle,* 737 F.3d 1063, 1071 n.5 (6th Cir. 2013) ("Due to the definition of legal pneumoconiosis, the [methods of rebutting the three presumed elements] are often expressed as 1) 'establishing that the miner does not have a lung disease related to coal mine employment' and 2) 'that the miner's totally disabling respiratory or pulmonary impairment is unrelated to his pneumoconiosis.'" (quoting 78 Fed. Reg. at 59106)).

The first method is to prove that the miner does not have a lung disease caused by coal mine employment. To do this, the employer must prove (A) that the miner does not have legal pneumoconiosis *and* (B) either that the miner does not have clinical pneumoconiosis, or that the miner's clinical pneumoconiosis was not caused by coal mine employment. These showings would rebut either the disease element (by demonstrating the absence of legal and clinical pneumoconiosis) or the disease-causation element (by demonstrating the absence of legal pneumoconiosis and that the miner's clinical pneumoconiosis was not caused by coal mine employment). If the employer fails to prove the absence of a lung disease related to coal mine employment, it can only rebut by the second method: attacking the presumed causal relationship between that disease and the miner's disability (thus rebutting the disability-causation element).

Unsurprisingly, the revised regulation provides for these same two basic methods of rebuttal:

> (d) *Rebuttal*—(1) *Miner's claim.* In a claim filed by a miner, the party opposing entitlement may rebut the presumption by—
>
> (i) Establishing both that the miner does not, or did not, have:
>
> (A) Legal pneumoconiosis as defined in § 718.201(a)(2); and
>
> (B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (*see* § 718.203); or
>
> (ii) Establishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in § 718.201.

Revised 20 C.F.R. 718.305(d), 78 Fed. Reg. 59115.

The former version of the regulation also provided for those same methods of rebuttal, albeit in language that was less clear.[10]  From 1980 until 2013, 20 C.F.R. § 718.305(a) provided that the presumption could be rebutted "only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."  Clause (A) allowed employers to rebut the presumption by proving that a miner did not have legal or clinical pneumoconiosis.

---

[10] The revised regulation's language was designed "to more clearly reflect that all three of the presumed elements may be rebutted."  78 Fed. Reg. 59106.  It does not reflect any substantive change.  *Id.* at 59107.

Clause (B) permitted rebuttal by proving that a miner's disability was unrelated to pneumoconiosis or that a miner's clinical pneumoconiosis was not caused by coal-mine employment.[11]

### 4. The rule-out standard

The revised regulations also explain what fact an employer must prove to establish rebuttal on any particular ground. Employers attacking the disease and disease-causation elements are simply required to prove the inverse of what claimants must prove to establish those elements without the benefit of the fifteen-year presumption. Revised 20 C.F.R. 718.305(d)(1)(i). For example, an employer can rebut presumed legal pneumoconiosis by proving that a miner does not have a lung disease "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. 718.201(b). But if the employer fails to rebut the presumption that a totally disabled miner has pneumoconiosis, it faces a more substantial hurdle in trying to rebut the presumption that pneumoconiosis contributes to that disability.

Claimants attempting to establish disability causation without the benefit of

---

[11] Former Section 718.305(d)'s rebuttal provision uses the same language that 30 U.S.C. § 921(c)(4) uses to describe the rebuttal options available to "the Secretary." Since the definition of pneumoconiosis was expanded in 1978 to include legal pneumoconiosis, however, it has logically exhausted all possible methods of rebuttal for employers as well as the government. *See infra* at 33-34.

16

a presumption are required to prove that pneumoconiosis is a "*substantially contributing cause*" of their disability.  20 C.F.R. 718.204(c)(1) (emphasis added).  To rebut the presumed link between a miner's pneumoconiosis and disability, however, the employer must "establish that ***no part*** of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis[.]"  Revised Section 718.305(d)(1)(ii) (emphasis added).  The same was true under the prior regulation.  *See* 20 C.F.R. 718.305(d)(2000) (the presumption "will be considered rebutted" if the liable party establishes that "the cause of death or total disability did not arise ***in whole or in part*** out of dust exposure in the miner's coal mine employment") (emphasis added).  This "no part" or "in whole or in part" standard is often referred to as the "rule-out" standard.[12]  The primary dispute in this case is whether the regulation adopting the rule-out standard, revised 20 C.F.R. 718.305(d)(1)(ii), is a permissible interpretation of the Act.[13]

---

[12] The Sixth Circuit sometimes describes it as a "contributing cause" standard.  *See Big Branch Resources,* 737 F.3d at 1071.  This brief avoids that formulation, as it invites confusion with the less demanding "substantially contributing cause" standard the coal company advocates.

[13] As explained in the preamble to the revised regulation, the rule-out standard does *not* (1) require employers to disprove disability causation by more than a preponderance of the evidence; or (2) govern the degree of medical certainty with which a doctor's opinion must be expressed.  78 Fed. Reg. 59107.  It merely establishes the fact that must be proved—*i.e.,* that pneumoconiosis played no role in a miner's disability.  "Thus, a party opposing entitlement may rebut the

(continued…)

**B. The regulatory rule-out standard is entitled to *Chevron* deference.**

Lafayette Spring argues that the ALJ committed reversible error by applying the rule-out standard instead of allowing it to rebut the presumption by proving that pneumoconiosis did not "substantially" or "significantly" contribute to the miner's total disability. Pet. Br. at 26. At times, Lafayette Spring describes its proposed "substantial contribution" standard as a "third method" of rebuttal, and frames its argument as whether the ALJ improperly limited it to the two statutory methods of rebuttal contained in 30 U.S.C. § 921(c)(4): proving that the miner does not have pneumoconiosis or that pneumoconiosis does not cause the miner's disability. *See, e.g.*, Pet. Br. at 24. Lafayette Spring's "substantial contribution" standard is, however, "not a unique third rebuttal method, but merely a specific way to attack the second link in the causal chain—that pneumoconiosis caused total disability." *Big Branch Resources*, 737 F.3d at 1070; *see* 20 C.F.R. § 718.204(c) (including substantially contributing cause standard in the definition of disability causation). Lafayette Spring identifies no limitation imposed on its ability to rebut other than the rule-out standard.[14] The Director's response therefore focuses on that issue.

_____

(…continued)

presumption when the preponderance of the evidence, including medical opinions that are documented and reasoned exercises of physicians' medical judgment, demonstrates that pneumoconiosis played no role in the miner's respiratory disability." *Id.*

[14] Nor could it, because the ALJ did not reject any of Lafayette Spring's medical
(continued…)

Because revised 20 C.F.R. § 718.305(d)(1)(ii) adopts the rule-out standard,

Lafayette Spring's challenge is governed by *Chevron's* familiar two-step analysis.

As this Court explained in upholding another BLBA regulation:

> In applying *Chevron*, we first ask "whether Congress has directly spoken to the precise question at issue." Our *Chevron* analysis would end at that point if the intent of Congress is clear, "for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

*Elm Grove Coal*, 480 F.3d at 292 (quoting *Chevron*, 467 U.S. at 842-43). If,

however,

> "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." In that regard, the courts have "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer."

*Id.* (quoting *Chevron*, 467 U.S. at 843-44).[15]

_____

(…continued)

evidence as outside the scope of permissible rebuttal. *See U.S. Steel v. Gray*, 588 F.2d 1022, 1225-26 (5th Cir. 1979) ("Even assuming that a coal mine operator might wish to adduce a type of rebuttal evidence that is not encompassed by the rebuttal clause of section [921(c)(4)], the petitioner in this case was not prevented by the hearing officer from submitting whatever rebuttal evidence it wished to submit."); *Antelope Coal Co. v. Goodin*, --- F.3d ---, No. 12-9590, 2014 WL 804008, *11 (10th Cir. March 3, 2014) (same).

[15] Of course, *Chevron* deference applies only if Congress has delegated the necessary rule-making authority to the agency. *Elm Grove Coal*, 480 F.3d at 292. That is the case here. The regulation falls within the Secretary of Labor's statutory authority "to issue such regulations as [he] deems appropriate to carry out the provisions of [the BLBA]." 30 U.S.C. § 936(a). *See also Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 124 (4th Cir. 1984) ("The Secretary has been given
(continued…)

**1. Chevron step one: Section 921(c)(4) is silent on what an employer must prove to rebut the presumption on disability-causation grounds.**

Applying *Chevron's* first step to this case is straightforward. The statute is silent on the question of what showing is required to establish rebuttal on disability-causation grounds. Indeed, it is entirely silent on the topic of employer rebuttal.[16] Congress has therefore left a gap for the Department to fill.

**2. Chevron step two: the regulatory rule-out standard is a permissible interpretation of the Act.**

The only remaining question is whether the regulatory rule-out standard is a permissible way to fill this statutory gap. The fact that Lafayette Spring's "substantial contribution" standard may also be a permissible interpretation is irrelevant.[17] "The court need not conclude that the agency construction was the

_____

(…continued)
considerable power under the Black Lung Act to formulate regulations controlling eligibility determinations.").

[16] The statute addresses rebuttal only in the context of claims in which the government is the responsible party, explaining that the Secretary can rebut the presumption only by proving (A) that the miner does not have pneumoconiosis or (B) that the miner's "respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. 921(c)(4). The second method encompasses disability causation. *See supra* at 13-14. But it does not specify what showing the government must make to establish rebuttal on that ground.

[17] The Director's rule-out standard and Lafayette Spring's "substantial contributing cause" standard are just two of many standards that could permissibly fill the statutory gap. For example, standards requiring employers to prove that
(continued…)

only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." *Chevron*, 467 U.S. at 843 n.11. Revised 20 C.F.R. 718.305(d)(1)(ii) must be affirmed so long as it is reasonable. *Chevron*, 467 U.S. at 845; *cf. Pauley*, 501 U.S. at 702 ("[I]t is axiomatic that the Secretary's interpretation need not be the best or most natural one by grammatical or other standards. Rather, the Secretary's view need only be reasonable to warrant deference.") (citations omitted).

Deference to this regulation is particularly appropriate because "[t]he identification and classification of medical eligibility criteria [under the BLBA] necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns. In those circumstances, courts appropriately defer to the agency entrusted by Congress to make such policy determinations." *Pauley*, 501 U.S. at 697. The fact that the rule-out standard establishes criteria for rebutting, rather than establishing, a claimant's entitlement does not change the fact that it establishes medical eligibility criteria. *Massey*, 736 F.2d at 124 ("The

_____

(…continued)

pneumoconiosis is not a "significant," "necessary," or "primary" cause of a miner's disability might also be permissible. So long as the rule-out standard, the standard the Department actually adopted, falls within the range of permissible alternatives, it must be upheld.

wisdom of the Secretary's rebuttal evidence requirement is not for this Court to evaluate, for that judgment properly resides with Congress").

*a. The rule-out standard advances the purpose and intent of Section 921(c)(4)*

As explained in the preamble to amended Section 718.305, the rule-out standard was adopted to advance the intent and purpose of the fifteen-year presumption. 78 Fed. Reg. 59106 (responding to comments suggesting that the Department eschew the rule-out standard in favor of the "substantially contributing cause" standard). Congress amended the BLBA in 1972 because it was concerned that many meritorious claims were being rejected, largely because of the difficulty miners faced in affirmatively proving that they were totally disabled by pneumoconiosis. *See Pauley*, 501 U.S. at 685-86. Persuaded by evidence that the risk of developing pneumoconiosis increases after fifteen years of coal mining work, "Congress enacted the presumption to '[r]elax the often insurmountable burden of proving eligibility'" those miners faced in the claims process. 78 Fed. Reg. 59106-07 (quoting S. Rep. No. 92-743 at 1 (1972), 1972 U.S.C.C.A.N. 2305, 2316-17).

Revised Section 718.305(d)(1)(ii) appropriately furthers that goal by imposing a rebuttal standard that is demanding but also narrowly tailored to benefit a subset of claimants who are particularly likely to be totally disabled by pneumoconiosis. The most direct way for an operator to rebut the fifteen-year

presumption is to prove that the miner does not have pneumoconiosis and the rule-out standard plays absolutely no role in that method of rebuttal.  Revised 20 C.F.R. 718.305(d)(1)(i); c*f. Tennessee Consol. Coal Co. v. Crisp*, 866 F.2d 179, 187 n.5 (6th Cir. 1989).  The rule-out standard is relevant only if the claimant worked for at least fifteen years in coal mines, has a totally disabling lung condition, and the employer cannot prove that the miner does not have pneumoconiosis.  It is entirely reasonable to impose a demanding rebuttal standard on an employer's attempt to prove that such a miner's disability is unrelated to pneumoconiosis.[18]

### b. Congress endorsed the Department's longstanding interpretation of Section 921(c)(4) when it re-enacted that provision without change in 2010.

The Department adopted the rule-out standard by regulation over 30 years ago.  *See* 20 C.F.R. 718.305(d) (1981) (Rebuttal is established if "the cause of … total disability did not arise ***in whole or in part*** out of dust exposure in the miner's coal mine employment.") (emphasis added).   This fact alone supports the Department's claim for deference.  *See, e.g., Shipbuilders Council of America v. U.S. Coast Guard*, 578 F.3d 234, 245 (4th Cir. 2009). (Deferring to agency

---

[18] *Cf.  Peabody Coal Co. v. Director, OWCP*, 778 F.2d 358, 365 (7th Cir. 1985) (Rejecting constitutional challenge to BLBA regulation; explaining "[u]nless the inference from the predicate facts of coal-mine employment and pulmonary function values to the presumed facts of total disability due to employment-related pneumoconiosis is 'so unreasonable as to be a purely arbitrary mandate,' we may not set it aside[.]") (quoting *Usery*, 428 U.S. at 28).

interpretation that was "longstanding, has been consistently applied in the same manner, and comports with the congressional intent of the governing statute."). More importantly, it suggests that Congress endorsed the rule-out standard when it re-enacted Section 921(c)(4) in 2010.

"Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *see also Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). If Congress was dissatisfied with Section 718.305(d)'s rule-out rebuttal standard when it re-enacted Section 921(c)(4) in 2010, it could have imposed a different standard in the amendment. Instead, Congress chose to re-enact the provision without changing any of its language. This choice can only be interpreted as an endorsement of the Department's longstanding position.

### c. The regulatory rule-out standard is consistent with this Court's case law interpreting the fifteen-year presumption and the similar interim presumption.

Only one court of appeals has addressed the rule-out standard since Section 921(c)(4) was revived in 2010, and it affirmed the standard. *Big Branch Resources, Inc. v. Ogle*, 737 F.3d 1063, 1061 (6th Cir. 2013) (agreeing with the Director that an employer "must show that the coal mine employment *played no part* in causing the total disability."). The issue was presented to this Court in *Owens*, but the panel did not resolve the question because the ALJ and Board did

not actually apply the rule-out standard in that case.  724 F.3d at 552.[19]

This Court did, however, apply the rule-out standard in cases analyzing the fifteen-year presumption as originally enacted.  *See Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939 (4th Cir. 1980); *Colley & Colley Coal Co. v. Breeding*, 59 F. App'x. 563, 567 (4th Cir. 2003).  For example, the deceased miner in *Rose* had totally disabling lung cancer and clinical pneumoconiosis.  614 F.2d at 938-39.[20] The key disputed issue was whether the employer had rebutted the fifteen-year presumption.  The Board denied the claim because the claimant failed to demonstrate a causal relationship between the miner's cancer and his pneumoconiosis, or between his cancer and coal mine work.  *Id.*  This Court properly recognized that the Board had placed the burden of proof on the incorrect party, explaining that: "it is the [employer's] failure effectively to *rule out* such a relationship that is crucial."  *Id.* (emphasis added).  After concluding that the employer's evidence was "clearly insufficient to meet the statutory burden"

---

[19] Judge Niemeyer, concurring, stated that he would have rejected the rule-out standard as inconsistent with *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1 (1976).  *Owens,* 724 F.3d at 559.  Lafayette Springs advances the same argument, which is addressed *infra* at 29-36.  The revised regulation implementing the rule-out standard had not been enacted when *Owens* was decided.

[20] *Rose* was a claim for survivors' benefits by the miner's widow.  The fifteen-year presumption applies to claims by survivors as well as miners.  *See* 30 U.S.C. 921(c)(4) ("there shall be a rebuttable presumption . . . that such miner's death was due to pneumoconiosis").

because its key witness "did not rule out the possibility of such a connection [between the miner's disabling cancer and pneumoconiosis or his mining work,]" this Court reversed the Board and awarded benefits. *Id.* at 939. *Accord Colley & Colley Coal Co.,*59 F. App'x. at 567 ("[T]he rebuttal standard requires the employer to rule out any causal relationship between the miner's disability and his coal mine employment by a preponderance of the evidence.") (citation and quotation omitted ). Lafayette Springs has given no reason for this Court to depart from *Rose*.

The fact that this Court (and many others) repeatedly affirmed the rule-out standard as an appropriate rebuttal standard in cases involving the now-defunct "interim presumption" established by 20 C.F.R. 727.203 (1999) is yet further evidence that it is a permissible rebuttal standard.[21] The interim presumption was substantially easier to invoke than the fifteen-year presumption, being available to any miner who could establish ten years of employment (or, in some circumstances, even less) and either total disability or clinical pneumoconiosis.

---

[21] The Part 727 "interim" regulations, including the interim presumption, applied to claims filed before April 1, 1980, and to certain other claims. *See* 20 C.F.R. 725.4(d); *Mullins Coal Co.*, 484 U.S. at 139. As this Court has recognized, the interim presumption is "similar" to the fifteen-year presumption, *Colley & Colley Coal Co.*, 59 F. App'x. at 567. Because few claims are now covered by the Part 727 regulations, they have not been published in the Code of Federal Regulations since 1999. 20 C.F.R. 725.4(d).

*See* 20 C.F.R. 727.203(a) (1999); *Pittston Coal v. Sebben*, 488 U.S. 105, 111, 114-15 (1988). Like the fifteen-year presumption, the interim presumption could be rebutted if the operator proved that the miner's death or disability did not arise "*in whole or in part* out of coal mine employment[.]" 20 C.F.R. 727.203(b)(3) (1999) (emphasis added).[22] As this Court held in *Massey*, "[t]he underscored language makes it plain that the employer must *rule out* the causal relationship between the miner's total disability and his coal mine employment in order to rebut the interim presumption." 736 F.2d at 123.[23] This, of course, is the same language that 20 C.F.R. 718.305(d) used to articulate the rule-out standard from 1980 until 2013. *See supra* at 16 n.11. As the Tenth Circuit recently explained, there is "no reason to interpret § 718.305(d) (2010) or the revised § 718.305(d)(1)(ii) (2013) any

---

[22] Rebuttal could also be established by proving that the miner did not have pneumoconiosis, 20 C.F.R. § 727.203(b)(4) (1999), or was not totally disabled, 20 C.F.R. § 727.203(b)(1)-(2) (1999).

[23] *See also Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 339 (4th Cir. 1996) ("This rebuttal provision requires the employer to *rule out* any causal relationship between the miner's disability and his coal mine employment by a preponderance of the evidence, a standard we call the *Massey* rebuttal standard."). The overwhelming majority of other courts to consider the issue have agreed. *See Rosebud Coal Sales Co. v. Wiegand*, 831 F.2d 926, 928-29 (10th Cir. 1987) (Rejecting employer's argument that rebuttal is established "upon a showing that [claimant's] disability did not arise in whole or in *significant* part out of his coal mine employment" as "wholly at odds with the decisions rendered by six courts of appeals" which "apply Section 727.203(b)(3) as written, requiring that any relationship between the disability and coal mine employment be ruled out.") (citing cases in the Third, Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits).

differently" than Section 727.305(d)(3).  *Antelope Coal*, 2014 WL 804008, at *2.

In *Massey*, this Court rejected an employer's argument that the rule-out standard was impermissibly restrictive, explaining that "[t]he wisdom of the Secretary's rebuttal evidence requirement is not for this Court to evaluate" because there is "nothing in the Black Lung Act to indicate that the Secretary's rebuttal evidence rule exceeds its congressional mandate." 736 F.2d at 124.[24]  If rule-out is an appropriate rebuttal standard for the easily-invoked interim presumption, it is hard to imagine how it could be an unduly harsh rebuttal standard in the context of the fifteen-year presumption.

In sum, the rule-out standard adopted in revised Section 718.305(d)(1)(ii) and its predecessor fills a statutory gap in a way that advances Section 921(c)(4)'s

-----

[24] Lafayette Springs cites no authority to support its suggestion that the regulatory rule-out standard is invalid simply because it is different than the standard a claimant must meet to prove disability causation without benefit of the Section 921(c)(4) presumption.  Nor is it compelled by logic, because claimants who cannot invoke the presumption are not similarly situated to those who can (most obviously, the latter worked for fifteen years or more in coal mines).  This asymmetry is hardly unique in the black lung program.  The most obvious example is the interim presumption, which also applied a rule-out rebuttal standard. Analogously, while a claimant can prove the existence of pneumoconiosis with x-ray evidence, a claim can never be denied solely on the basis of a negative x-ray. *See* 20 C.F.R. 718.202(a)(1), (b).  Indeed, the main point underlying congressional enactment (and restoration) of these presumptions was to make it easier for claimants to prove entitlement.  The Fund then can hardly complain about its heavier burden; that is what Congress intended.

purpose, was implicitly endorsed when Congress re-enacted that provision without change in 2010, and is consistent with this Court's interpretations of both the fifteen-year presumption and the similar interim presumption.    The rule-out standard is therefore a reasonable interpretation of the Act entitled to this Court's deference.

## C. The rule-out standard is consistent with *Usery v. Turner Elkhorn Mining*

Lafayette Springs argues that the regulatory rule-out standard is inconsistent with the Supreme Court's decision in *Usery*.    *See* Pet. Br. at 21-30.    From Lafayette Springs' brief, one might expect to find in *Usery* a holding that employers can rebut the fifteen-year presumption by proving that pneumoconiosis did not substantially contribute to a miner's disability.    But *Usery* says nothing about what fact an employer must prove to establish rebuttal on disability-causation grounds.    It addresses an entirely distinct issue: whether, before legal pneumoconiosis was compensable under the Act, employers could rebut the presumption by proving that a miner was totally disabled by a lung disease caused by coal dust that was not clinical pneumoconiosis.    The answer (yes) is historically interesting.    But because every disease caused by coal dust is now (legal) pneumoconiosis, its interest is only historical.

*Usery* held that 30 U.S.C. 921(c)(4)'s rebuttal-limiting sentence does not apply to operators.    That sentence provides: "The Secretary may rebut such

presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." This is the same language that the prior version of Section 718.305 used (beginning in 1980) to describe rebuttal options for employers as well as the government. As explained *supra* at 33-34, these options now exhaust the logically possible methods of rebuttal because they encompass all three presumed elements of entitlement.

But this was not true when Section 921(c)(4) was enacted in 1972 or when *Usery* was decided in 1976. Before the statutory definition of pneumoconiosis was expanded in 1978, only miners disabled by *clinical* pneumoconiosis were generally entitled to BLBA benefits. *See Andersen v. Director, OWCP*, 455 F.3d 1102, 1105-06 (10th Cir. 2006) ("When the BLBA was originally enacted," the definition of pneumoconiosis encompassed "only those diseases the medical community considered pneumoconiosis[,]" *i.e.* clinical pneumoconiosis.); *Usery*, 428 U.S. at 6-7.[25]

---

[25] This is also clear from the pre-1978 regulatory definitions of pneumoconiosis, which are very similar to the modern definition of clinical pneumoconiosis. *Compare* 20 C.F.R. 718.201(a)(1) ("***clinical pneumoconiosis*** . . . includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis") (emphasis added) *with* 20 C.F.R. 410.110(o) (1970) ("***pneumoconiosis*** . . . includes anthracosis, silicosis, or anthracosilicosis") (emphasis added) *and* 20

(continued…)

Before 1978, miners afflicted with, for example, totally disabling emphysema caused solely by coal dust would not be entitled to benefits.[26]  This would be true even for miners who also had a mild case of clinical pneumoconiosis that did not contribute to their disability.  If such a miner invoked the fifteen-year presumption, however, Section 921(c)(4)'s rebuttal-limiting sentence would prevent the Secretary from rebutting the miner's entitlement.  The Secretary could not prove either (A) that the miner did not have clinical pneumoconiosis (because the miner in question did suffer from that condition), or (B) that the miner's disability did not arise from the miner's exposure to coal dust (because the miner's disabling emphysema did arise from coal dust exposure).  The government could

_____

(…continued)

C.F.R. 410.110(o)(1) (1976) ("***pneumoconiosis*** . . . includes coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis")  (emphasis added).  After several presumptions (including the 15-year presumption) were added to the BLBA in 1972, the regulatory definition was amended to include situations where a presumption was invoked and not rebutted as well as the listed diseases.  *See* 20 C.F.R. 410.110(o)(2)-(3) (1976).  But the general regulatory definition of pneumoconiosis did not include what is now called "legal" pneumoconiosis until after statutory definition was broadened in 1978.  *See* 20 C.F.R. 718.201 (1981) ("pneumoconiosis" includes "any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure").

[26]  Given the long-established judicial acceptance of the concept of "legal pneumoconiosis," *see Barber v. Director, OWCP*, 43 F.3d 899, 901 (4th Cir. 1995), it may be difficult to imagine a time when legal pneumoconiosis was not compensable.  But before 1978, that was the case.

prove (C) that the miner's disability resulted from a disabling lung disease caused by coal dust exposure that was not pneumoconiosis. But that rebuttal method is not listed in Section 921(c)(4). Thus, under Section 921(c)(4)'s rebuttal-limiting sentence, miners invoking against the federal government were effectively entitled to benefits even though they were not disabled by clinical pneumoconiosis.

This is the precise scenario animating *Usery's* discussion of the fifteen-year presumption. The operator-plaintiffs in *Usery*, concerned that Section 921(c)(4)'s rebuttal-limiting sentence would be applied to private employers as well as the government, argued that the sentence effectively created an unconstitutional irrebuttable presumption "because it establishes liability even though it might be medically demonstrable in an individual case that the miner's pneumoconiosis was mild and did not cause the disability" and "that the disability was wholly a product of other disease" caused by coal dust exposure, that "is not otherwise compensable under the Act." 428 U.S. at 34-35. The Court recognized that "[t]he effect of this limitation on rebuttal evidence is … to grant benefits to any miner with 15 years' employment in the mines, if he is totally disabled by some respiratory or pulmonary impairment arising in connection with his employment, and has a case of pneumoconiosis[,]" but avoided the constitutional question by holding that Section 921(c)(4)'s rebuttal-limiting sentence "is inapplicable to operators." *Id.* at 34, 35-37.

It is true that *Usery* "confirmed the existence of *a limitation* on the Secretary that does not apply to the employer, necessarily recognizing that rebuttal methods (A) and (B) identified in 921(c)(4) are not logically equivalent to the methods that would otherwise be available." *Owens*, 724 F.3d at 561 (Niemeyer, J. concurring). Section 921(c)(4)'s rebuttal-limiting sentence barred the Secretary from defeating the presumption by proving that a miner was disabled by a disease caused by coal dust other than pneumoconiosis, a rebuttal method that "would otherwise be available" in 1976. As a result, certain miners disabled by legal pneumoconiosis were effectively entitled to BLBA benefits long before legal pneumoconiosis was generally compensable under the Act, but only if they invoked the presumption against the Secretary.

This special limitation on the Secretary became irrelevant in 1978, when the definition of pneumoconiosis was expanded to include what is now known as legal pneumoconiosis, *i.e.*, any "chronic lung disease or impairment . . . arising out of coal mine employment." 20 C.F.R. 718.201(a)(2).[27] As a result, the scenario motivating *Usery's* discussion of the rebuttal-limiting sentence became moot. Proving that a miner's disability resulted from a lung disease caused by coal dust exposure that was not pneumoconiosis is no longer a valid method of rebuttal

---

[27] *See supra* note 8.

because every lung disease caused by coal dust exposure is legal pneumoconiosis.[28]  To the contrary, because an employer must rebut legal as well as clinical pneumoconiosis, it must establish that the miner is *not* disabled by such a disease.[29]

Most importantly for present purposes, *Usery* has nothing at all to do with the rule-out standard.  At most, *Usery* stands for the proposition that operators

---

[28]  The irrelevance of the rebuttal-limiting sentence in the post-1978 regime is similarly illustrated by the Court's description of its effect, which was to "grant benefits to any miner with 15 years' employment in the mines, if he is totally disabled by some respiratory or pulmonary impairment arising in connection with his employment, *and* has a case of pneumoconiosis[.]"  428 U.S. at 34 (emphasis added).  Today, of course, every respiratory or pulmonary impairment arising from coal mining *is* a case of (legal) pneumoconiosis.  It is only fitting that black lung law has evolved as our understanding of the effects of coal dust exposure has grown.  *See*, *e.g.*, *Harman Min. Co. v. Director, OWCP*, 678 F.3d 305, 314 (4th Cir. 2012) (observing that regulatory amendments were based on advances in medical and scientific knowledge set forth in the regulatory preamble).

[29]  The many authorities applying the rebuttal-limiting sentence's language to operators – including 20 C.F.R. 718.305 (1981) and *Rose*, 614 F.2d at 939 – simply reflect the fact that, after 1978, operators were effectively limited to the same rebuttal methods as the Secretary.  *See generally* 78 Fed. Reg. 59106 (Once the definition of pneumoconiosis was expanded to include legal pneumoconiosis, "[t]he only ways that any liable party – whether a mine operator or the government – can rebut the 15-year presumption are the two set forth in the presumption, which encompass the disease, disease-causation, and disability-causation entitlement elements.").  While Section 921(c)(4)'s rebuttal-limiting sentence has never directly applied to operators, it encompassed all logically available rebuttal methods for employers as well as the Secretary after 1978.  The prior regulation's wording has produced understandable confusion on that point, which is one reason the revised regulation no longer uses the same text.

34

must be allowed to rebut the fifteen-year presumption by proving that a miner's disability is caused by a disease other than pneumoconiosis. Both the old and revised version of 20 C.F.R. 718.305 allows operators to do just that. But nothing in *Usery* even suggests that an operator must be allowed to establish disability-causation rebuttal by proving that pneumoconiosis is not a "substantial" contributing cause of a miner's disability. To the contrary, the words the Court used to frame the operators' argument – the rebuttal-limiting sentence can prevent rebuttal "even though it might be medically demonstrable in an individual case that the miner's pneumoconiosis was mild and did not cause the disability [and] that *the disability was **wholly** a product of other disease*" – are not only consistent with the rule-out standard, they essentially articulate the rule-out standard. *Usery*, 428 U.S. at 34-35 (emphasis added).

In sum, the regulatory rule-out standard is entirely consistent with *Usery*, which simply does not hold that employers can rebut the fifteen-year presumption by proving that pneumoconiosis is not a "substantial" cause of a miner's disability.[30] It is also consistent with the plain text of Section 921(c)(4), which is

_____

[30] As a result, Lafayette Spring's extensive analysis of Supreme Court decisions addressing regulations that interpret statutes in ways that conflict with earlier judicial interpretations is irrelevant. Pet. Br. at 27-30. In any event, *Usery* explicitly left open the possibility that a regulation might be permissible which limits operators to the same two rebuttal methods available to the Secretary. 428

(continued…)

entirely silent on the subject of whether attempts to rebut the presumption by disproving disability causation should be governed by a rule-out standard, a substantially-contributing-cause standard, or any other standard.[31]     Lafayette Spring's argument that the ALJ's use of the rule-out standard was error should be rejected.

## III. The ALJ properly awarded the widow's claim under Section 932(l) of the Act after finding her husband entitled to benefits.

Lafayette Springs argues that Mrs. Loudermilk does not meet the criteria for derivative entitlement under Section 932(l) because the award of benefits in her husband's lifetime claim has been appealed and therefore is not yet final. Pet. Br. 48-49. This argument is without merit.[32]

_____

(…continued)
U.S. at 37 and n.40 (observing that "the role of regulations is not merely interpretive; they may instead be designedly creative in a substantive sense, if so authorized").

[31] To the extent that Lafayette Spring's brief could be read to suggest that the rule-out standard itself is an interpretation of the text of Section 921(c)(4)'s rebuttal-limiting sentence, it cites nothing in *Usery* or any other case supporting that claim. Such an interpretation would also be inconsistent with the Director's explanation for adopting the rule-out standard in the revised regulation and the fact that the rule-out standard also applied to 20 C.F.R. 727.203's interim presumption, which did not derive from Section 921(c)(4)'s text.

[32] The Director is aware of at least 15 instances in which the Office of Administrative Law Judges has denied a widow's claim for derivative entitlement based on non-final miner awards and remanded the claim to the district director. The attached February 18, 2014, order in *Ball v. Island Creek Coal Co.*, Case No. 2014-BLA-5083, is typical. It indicates the ALJ will continue to remand these

(continued…)

36

As an initial matter, Lafayette Springs finds no support for its contention in the plain text of Section 932(l). Section 932(l) requires only that the miner has been "determined to be eligible to receive benefits."[33] It says nothing about that determination being final. Thus, Lafayette Springs is simply attempting to interject the additional condition of finality in the statutory text where there is none. When Congress intends to restrict the receipt of black lung benefits, it has done so explicitly. For instance, under 30 U.S.C. 923(d), a miner engaged in coal mine employment who obtains an award may not receive benefits while so employed (unless he has complicated pneumoconiosis).[34] Section 932(l), by contrast,

_____

(…continued)
survivor claims until there is published precedent that a miner's award need not be final before derivative benefits under Section 932(l) may be awarded. Thus far, the Director has appealed two of these ALJ decisions to the Benefits Review Board.

[33] Section 932(l) provides that

> In no case shall the eligible survivors of *a miner who was determined to be eligible to receive benefits* under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner.

30 U.S.C. 932(l) (2013) (emphasis added).

[34] In relevant part, Section 923(d) provides:

> No miner who is engaged in coal mine employment shall . . . be entitled to any benefits . . . while so employed. Any miner who has been determined to be eligible for benefits pursuant to a claim filed while such miner was engaged in coal mine employment shall be entitled to such benefits if his or her employment terminates within one year after the date such determination becomes final.

30 U.S.C. 923(d); *accord* 20 C.F.R. 725.504.

(continued…)

contains no such explicit restriction, and this Court should accordingly respect Congress's decision not to condition the receipt of derivative benefits on a final miner's award.  As the Board held below, the Court need go no further than Section 932(l)'s plain text to reject Lafayette Spring's contention.  2013 BRB D&O at 6; *accord Maynard v. Laurel Run Mining Co.*, BRB Nos. 11-0817 BLA, 11-0817 BLA-A, and 12-0032 BLA, 2012 WL 5548989 (Ben. Rev. Bd. October 31, 2012) (unpublished).[35]

---------------------

(…continued)

Section 923(d) thus recognizes that a determination of eligibility may precede actual receipt of benefits.  This comports with the Director's commonsense view that when a miner receives benefits (or must be paid them), he has been determined eligible to receive them.  This initial determination of eligibility is not tied to a final award under Section 923(d), although the requirement to quit working within one year post-award is.  By doing so, Congress gave the miner the option of continued gainful employment until his claim is finally decided, and then a short time (one-year) after a final award to elect retirement.  Although Section 923(d) supports the Director's position here, it has little or no application in a widow's claim for the obvious reason that a miner must first be deceased before a survivor can obtain benefits, derivative or otherwise.

[35] In *West Virginia CWP Fund v. Stacy*, 671 F.3d 378 (4th Cir. 2011) *cert. den.* 133 S.Ct. 127 (2012), the Court referred to the miner's award as being final when discussing automatic entitlement under Section 932(l).  671 F.3d at 389.  But the issue whether a widow may receive derivative benefits based on her husband's non-final award was not presented (or briefed) in *Stacy*.  Among other reasons, the miner had been receiving black lung benefits for 20 years before he died and his award was obviously final.  671 F.3d at 382.  The Board has also occasionally described a miner's award as final in the derivative benefits context, but again that was because the miner's award was, in fact, final.  *See Askew v. Drummond Coal, Inc.*, No. 12-0349 BLA, 2013 WL 878731, *2, (Ben. Rev. Bd. Feb. 27, 2013); *Colegrove v. Island Creek Coal Co.*, No. 11-0839 BLA, 2012 WL 3903589, *3,
(continued…)

To the extent that Lafayette Springs argues that finality is an implicit and necessary condition of eligibility to receive benefits, it is wrong. The Secretary's black lung regulations clearly establish when a miner is "eligible to receive benefits."[36] And those rules establish that any miner whose claim is awarded is not only "eligible" to receive benefits, but *entitled* to receive benefits, regardless of whether the award is final.

This is true from the very first determination in the claims process in the miner's favor. If an OWCP district director recommends an award, the responsible operator is free to accept the district director's recommendation, and of course, would then be required to pay the miner's benefits. *See* 20 C.F.R. 725.412(b), .502(a)(2). If the responsible operator rejects the recommendation and requests a formal hearing, the miner is entitled to receive benefits from the Black Lung

--------------------

(…continued)

(Ben. Rev. Bd. Aug. 27, 2012); *Gilbert v. Island Creek Coal Co.*, No. 12-0031 BLA, 2012 WL 5549039,*2, (Ben Rev. Bd. Oct. 12, 2012). Because the issue here was not presented or addressed, these incidental references to final miner awards have no precedential value and are entirely unpersuasive. *See Brecht v. Abrahamson,* 507 U.S. 619, 630-31 (1993) (*stare decisis* not applicable unless the issue was "squarely addressed" in the prior decision); *U.S. v. White,* 670 F.3d 498, 523 (4th Cir. 2012); *Fernandez v. Keisler,* 502 F.3d 337, 343 (4th Cir. 2007) (court is bound by holdings, not unwritten assumptions).

[36] The BLBA authorizes the Secretary to prescribe regulations "to provide for the payment of benefits by [coal mine] operator[s] to persons entitled thereto." 30 U.S.C. 932(a).

Disability Trust Fund.[37]  26 U.S.C. 9501(d)(1)(A)(i); 20 C.F.R. 725.419(a), .522(a).

A miner whose claim is awarded by an ALJ, the Benefits Review Board, or a reviewing court (which are referred to as "effective awards") is similarly entitled to benefits regardless of whether the operator appeals that award.  Under 20 C.F.R. 725.502(a)(1), "benefits shall be considered due after the issuance of an effective order requiring the payment of benefits."[38]  Moreover, benefits awarded by an effective order are due "notwithstanding the pendency of a motion for reconsideration before an administrative law judge or an appeal to the Board or court," *id.*, and they remain due until such time as the order requiring payment is

---

[37] The Trust Fund was established in 1977 to transfer responsibility for the payment of benefits from the Federal government to the coal industry.  20 C.F.R. 725.490.  It is financed by an excise tax on the sale of coal.  26 U.S.C. 9501.

[38] Section 725.502(a)(1) is consistent with incorporated provisions of the Longshore Act.  Section 21(a) of the Longshore Act, 33 U.S.C. 921(a), which is incorporated into the BLBA by 30 U.S.C. 932(a), provides in pertinent part "[a] compensation order shall become effective when filed in the office of the deputy commissioner."  33 U.S.C. 921(a).  The term "effective" in Section 21(a) is equivalent to the terms "due" and "due and payable" in Longshore Act Sections 14(f) and 18(a), 33 U.S.C. 914(f) and 918(a), also incorporated into the BLBA. *Tidelands Marine Service v. Patterson*, 719 F.2d 126, 127 n. 1 (5th Cir. 1983);

When an order becomes "effective" under the black lung regulations depends on the issuer:  a district director award is effective after 30 days if no hearing request is made; an ALJ order is effective when filed with the district director; a Board decision is effective when issued; and a court decision becomes effective in accordance with applicable court rules.  20 C.F.R. 725.502(a)(2).

vacated. *Id*. Until then, however, the obligation to pay benefits persists pending a final decision, and payment may be stayed only in cases of irreparable injury. 33 U.S.C. 921(a)(3) incorporated into the BLBA by 30 U.S.C. 932(a); 20 C.F.R. 802.105(a).

Once benefits are due, *i.e.*, when the order becomes effective, the liable operator must immediately pay them. 20 C.F.R. 725.530(a). If it does not, the operator is in default, *id*.; and it risks assessment of a 20% surcharge of additional compensation if the miner does not receive compensation within ten days. *Id*.; 33 U.S.C. 914(f); *see Combs v. Elkay Mining Co.*, 881 F.Supp. 2d 728, 731 (S.D. W.Va 2012); *Nowlin v. Eastern Associated Coal Corp.*, 266 F.Supp. 2d 502, 504 (N.D. W.Va. 2003); *Kinder v. Coleman & Yates Coal Co.*, 974 F.Supp. 868, 871 (W.D. Va 2009). But even when the operator refuses to pay on an effective order, the awarded miner will still receive benefits--the Trust Fund pays instead. 26 U.S.C. 9501(d)(1)(A)(ii) (requiring Trust Fund payment of benefits when the liable operator fails to pay within 30 days after payment is due); 20 C.F.R. 725.522(a) (same).

Thus, at every stage of a black lung proceeding, when a miner is awarded benefits, there is a legal obligation to pay those benefits either on the operator or the Trust Fund. Obviously, a miner who must be paid benefits is eligible to receive them.

Lafayette Springs therefore is plainly wrong (Pet. Br. 49) in equating an effective order requiring the payment of compensation with a final order ultimately adjudicating the merits. The cited provision, 20 C.F.R. 725.479(a), which concerns only ALJ decisions, makes an ALJ order "effective" when filed with the district director, and further provides that the effective order becomes "final" when not appealed within 30 days. But that provision says nothing about the duty to pay benefits based on an effective award.

The revised black lung regulation, 20 C.F.R. 725.212(a)(3), 78 Fed. Reg. 59102, 59117 (Sept. 25, 2013), is consistent with the statutory and regulatory scheme mandating payment of benefits following a finding of entitlement. This regulation implements the ACA's restoration of derivative benefits for surviving spouses under Section 932(l). The provision states that a surviving spouse is entitled to benefits if "the deceased miner . . . filed a claim for benefits on or after January 1, 1982, which results or resulted in a final award of benefits and the surviving spouse . . . filed a claim for benefits after January 1, 2005 which was pending on or after March 23, 2005." The rule's language – which speaks of a miner's claim that "results or resulted in a final award" – plainly encompasses two different situations: an already-final miner award, *i.e.*, "resulted in," and a potentially-final miner award, *i.e.*, a claim that "results in" an award. In both instances, the survivor has met Section 725.212(a)(3)'s condition of entitlement.

Apart from rendering the text's plain language meaningless, construing Section 725.212(a)(3) as limited to only final miner awards, would be in significant tension with, if not inconsistent, with the authorizing statute, Section 932(l), which merely requires that the miner be "eligible to receive benefits." And eligibility to receive benefits, as we have shown, is not dependent on a final order.

Furthermore, having dependent survivors wait years, possibly even decades, for a final resolution of the miner's claim is inconsistent with the purpose of restoring derivative benefits, namely, that there be no cessation in the payment of benefits. *See B & G Constr. Co., Inc. v. Director, OWCP*, 662 F.3d 233, 250-51 (3d Cir. 2011) (citing ACA Section 1556's title, "CONTINUATION OF BENEFITS" as evidence of Congress's intent in restoring derivative benefits).[39] Consequently, preconditioning derivative benefits on a final miner award is clearly inconsistent with the Department's stated goal in promulgating the regulation "to ensure that survivors entitled to derivative benefits under ACA-amended Section

---

[39] The length of the proceedings here is fairly typical and illustrates the long wait for derivative benefits that survivors may face if the miner's claim must first become final. After years of litigation, Lafayette Springs now requests that the claims go back to square one for reconsideration (or be denied). We doubt that Congress, in calling for a continuation of benefits, had this kind of delay in mind before benefits could be "continued." *See Grigg v. Director, OWCP*, 28 F.3d 416, 420 (4th Cir. 1994) (decrying the 19 years taken for the processing of a black lung claim); *Dalton v. OWCP*, 738 F.3d 779, 780 (7th Cir. 2013) (noting claimants' 15-year struggle for black lung benefits).

932(l) begin to receive benefits as soon as possible after filing a claim." 77 Fed. Reg. 19456, 19469 (March 30, 2012). Indeed, the availability of a "certain, *prompt recovery*" is essential to the "central bargain" in the longshore and black lung workers' compensation systems. *Roberts v. Sea-Land Serv., Inc.*, 132 S.Ct. 1350, 1354 (2012) (emphasis added); *Williams v. Jones*, 11 F.3d 247, 254 (1st Cir. 1993) ("Congress anticipated the severe financial hardships that could beset injured employees as a result of lengthy appeals.").

And even if Section 725.212(a)(3)'s text is ambiguous, the Director's reading of the regulation is reasonable because, as explained, it squares with the underlying statutory provisions. It is thus entitled to substantial deference. *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159 (1988) (Director's interpretation of the BLBA's implementing regulations "is deserving of substantial deference unless it is plainly erroneous or inconsistent with the regulation").

Finally, the coal mine operator is not harmed by making it liable for the widow's interim derivative benefits. First, absent the miner's death, it would have been responsible for the *miner's* interim benefits during the litigation. So, it is no worse off in being responsible for the widow's benefits while the miner's case proceeds. Moreover, should the coal mine operator in fact pay the widow's interim derivative benefits pending final resolution of the miner's claim, it has the right to initiate overpayment proceedings against the widow to recover sums paid if the

miner's award is later reversed.  *See* 20 C.F.R. 725.522(b).[40]  Of course, here – as is typical – Lafayette Springs has made no interim payments, and so, if the miner's award is ultimately denied, it will have lost nothing.

In sum, Lafayette Spring's argument must be rejected on the basis of a simple, unassailable proposition:  a miner is (at a minimum) eligible to receive benefits when the law demands their payment, and that is the case whenever a miner is entitled to benefits.

---

[40] Section 725.522(b) provides that benefits paid to a claimant whose interim award of benefits is later vacated are recoverable overpayments.  But, contrary to Lafayette Spring's assertion (Pet. Br. at 49), Section 725.522(b) does not require a final determination of entitlement – either an award or a denial – before eligibility is ascertained.  Indeed, the miner must first be eligible to receive, and actually be paid, benefits before there can be an "overpayment."  Moreover, Section 725.522(b) does not even mandate that the later order itself be final to recover the overpayment, and Section 725.540(b) allows recovery of an overpayment even when the claimant is later found to be entitled to benefits.

# CONCLUSION

The Court should rule that 20 C.F.R. 718.305 is a permissible construction of the BLBA, and that a miner's award need not be final before a survivor may receive derivative benefits under Section 932(l) of the Act.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

RAE ELLEN JAMES
Associate Solicitor

GARY K. STEARMAN
Counsel for Appellate Litigation

/s/ Michelle S. Gerdano
MICHELLE S. GERDANO
Attorney, U.S. Department of Labor
Office of the Solicitor, Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C.  20210
(202) 693-5649
BLLS-SOL@dol.gov
Gerdano-Seyman-Miche@dol.gov
  Attorneys for the Director, Office
  of Workers' Compensation Programs

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that

this brief is proportionally spaced, using Times New Roman 14-point typeface, and

contains 11,440 words, as counted by Microsoft Office Word 2010.


/s/ Michelle S. Gerdano
MICHELLE S. GERDANO
Attorney
U.S. Department of Labor
BLLS-SOL@dol.gov
Gerdano-Seyman-Miche@dol.gov

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2014, copies of the Director's brief were served electronically using the Court's CM/ECF system on the Court and the following:

    Ashley M. Harman, Esq.
    Jackson & Kelly, PLLC
    P.O. Box 619
    Morgantown, WV  26507
    aharman@jacksonkelly.com

    Valla Jean Loudermilk
    HC 83, Box 842
    Rainelle, WV 25962

          /s/ Michelle S. Gerdano
          MICHELLE S. GERDANO
          Attorney
          U.S. Department of Labor
          BLLS-SOL@dol.gov
          Gerdano-Seyman-Miche@dol.gov

**U.S. Department of Labor**

Office of Administrative Law Judges
800 K Street, NW, Suite 400-N
Washington, DC 20001-8002

(202) 693-7300
(202) 693-7365 (FAX)



Issue Date: 18 February 2014

**IN THE MATTER OF:**

JANICE S. BALL (widow),
    Claimant,

**v.**                            Case No.:   2014-BLA-5083

ISLAND CREEK COAL CO.,
    Employer,

**and**

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
    Party-in-Interest.

### ORDER OF REMAND

    Mrs. Ball's survivor's claim, which was placed in pay status by the District Director under the automatic entitlement provisions of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (2010) (PPACA) was referred to this Office for adjudication at the request of Employer. Although the District Director issued an award of benefits in the miner's claim, counsel for Employer disagreed with this decision, and requested a hearing before this Office. Thus, the miner's claim is pending.

    As a result, the miner's claim has not been finally awarded such that Mrs. Ball's claim is not ripe for consideration under the automatic entitlement provisions of the PPACA. While the District Director has discretion to adopt the policy of paying survivors' claims prior to final adjudication of underlying miners' claims, the threshold requirements of automatic entitlement under the PPACA have not been met where the miner's claim is still in litigation, as is Mr. Ball's claim here. *See Askew v. Drummond Coal, Inc.*, 2013 WL 8787313, BRB No. 12-0349 BLA (Feb. 27, 2013)(unpub.) ("the miner was receiving benefits under a final award at the time of his death"); *Gilbert v. Island Creek Coal Co.,* 2012 WL 5549039, BRB No. 12-0031 BLA (Oct. 12, 2012)(unpub.) ("the administrative law judge found that the miner was receiving benefits at the time of his death due to a

final award"); *Colegrove v. Island Creek Coal Co.*, 2012 WL 3903589 (Aug. 27, 2012)(unpub.).

This tribunal interprets the language of the PPACA as requiring a *final* award of benefits in the miner's claim prior to issuing an automatic award in the survivor's claim.  Therefore, while the District Director has the discretion to place survivors' claims in pay status, absent published precedent by the Benefits Review Board or a circuit court that the award of benefits in a miner's claim need not be final prior to finding automatic entitlement in a survivor's claim, this tribunal shall continue to remand survivors' claims awarded under the automatic entitlement provisions of the PPACA where the underlying awards of the miners' claims are not final.  Accordingly,

IT IS ORDERED that Mrs. Ball's claim be REMANDED to the District Director.

William S. Colwell
Associate Chief Administrative Law Judge